## South Hampton *vs.* Hampton Falls.

Prior to the statute of January 1, 1796, an illegitimate child had its settlement at the place of its birth, and could not acquire a new settlement by a residence in another town while under the age of seven years.

A pauper who is an alien, having no settlement in this state, is entitled to support in the town where his wife has her settlement; and such town is liable to any other town by which such assistance may be rendered, though such town has its ultimate remedy against the county.

Where the pauper is sick, and needs the assistance of his wife, who is otherwise able to maintain herself, both may, by the necessity of such assistance, become paupers, and liable to support.

Assumpsit, for the support of a pauper. The declaration set forth that Louisa Wood, wife of Timothy Wood, resided in South Hampton from January 3, 1836, to March 3, 1836, and was poor and in need of relief, and had no relations of sufficient ability to support and maintain her; and that Timothy Wood during this time was a pauper, having no settlement in this state, and was liable to be supported by Hampton Falls, where his wife had her settlement; and that the overseers of the poor of South Hampton relieved and maintained Louisa and Timothy during said time, and thereby expended the amount claimed for their support.

The plaintiffs proved that Louisa Wood was an illegitimate child of Sally Shaw, and was born at Hampton Falls some time in the winter of 1791–2—that Sally Shaw was the daughter of Malachi Shaw, who had his settlement at

Hampton Falls, and died in or previous to 1786—that Louisa was the wife of Timothy Wood, who never had any settlement in this state—that said Timothy was taken sick in South Hampton, in November, 1835, and remained sick, in a destitute situation, and unable to support himself, till he died, about April 1, 1836—that the town of South Hampton furnished Wood and his wife, who then lived together, during the time mentioned in the account, with the supplies charged.

The defendants then proved that Sally Shaw lived in Kensington for two or three years next before the birth of Louisa ; and that, soon after her birth, Sally Shaw returned with her child to Kensington, where she resided for about twenty years afterwards, until her decease, and her daughter Louisa resided there till her intermarriage with Wood.

The defendants also proved that immediately prior to Wood's sickness, he and his wife worked out on wages separately ; she receiving fifty-eight cents per week for her services, besides her own support ; and that after he became unable to labor, she, with such voluntary assistance as she procured from her neighbors and friends, supported and nursed him until January 3, 1836—that about that time one John Currier, with the consent of Timothy Wood, but against the will and consent of his wife, applied for assistance to the selectmen of South Hampton, for and in behalf of Wood and his wife, who thereupon rendered the assistance furnished. During the whole time till his death, Louisa Wood had the entire care of her husband as his nurse ; and the town of South Hampton was at no expense for other nursing ; she was in good health, and able to earn her wages, as she had done before and has done ever since his death.

It was proved that at February term of the court of common pleas, 1837, the overseers of South Hampton laid before the court a claim, embracing the items mentioned in the account annexed to the writ, for expenditures incurred during the sickness and funeral of Wood ; and the court allowed

for the board and doctor's bill of said Wood, and the charges for his funeral expenses. The overseers at that time informed the court that the account was for the expenditures for Wood and his wife; but the court declined to allow any thing for the support of Wood's wife, as she was not a county pauper. The sum allowed by the court covered the whole amount of the account annexed to the writ, which was proved upon the trial, except $11·46.

A verdict was taken, by agreement, for the plaintiffs, for $11·46, on which judgment is to be rendered, or it is to be set aside, and a general verdict entered for the defendants, as the court may direct.

*Tilton & Farrar*, for the defendants, contended, 1. That Louisa Wood is not a pauper, within the provisions of the statute. The phraseology of the statute is, " a person being poor and unable to maintain him or herself, may be supported," &c. The facts set forth in the case directly negative the allegation that Louisa Wood was unable to maintain herself.

2. Louisa Wood had no settlement at Hampton Falls. She acquired a settlement by three months' residence in Kensington without being legally warned out, provided she was of such an age at the time that a settlement might be gained. The statute as to three months' residence excepts certain individuals, sent abroad for purposes of education and nursing, from gaining a settlement; and, by implication, all other persons without exception would gain a settlement by such residence. There was a different rule at common law, by which, in case of an illegitimate child, a new settlement could not be gained before the age of seven years; but we contend that the statute must be regarded as overruling the common law in this particular.

*Jas. Bell*, for the plaintiff. The labor of the wife is the property of the husband. The pauper can certainly control

her services, in case of need, or sickness on his part; and, if both are paupers from this cause, it is a sufficient ground for a legal claim of assistance.

Prior to the statute of January 1, 1796, an illegitimate child had its settlement in this state at the place of its birth. In this case the birth of the pauper was at Hampton Falls, and there is no pretence that she has since gained a settlement in any other town, unless it may have been gained by a residence in Kensington for more than three months, while under the age of seven years. We contend that the proviso of the statute of 5 George I., exempting persons from gaining a settlement who went, or were sent, abroad for purposes of nursing or education, was designed to exempt in its terms all children under the age of seven years from gaining a settlement, in conformity to the rule then well established at common law. We think the phraseology of the statute so conforms to the decisions at common law, as to require this construction; and such construction has been given to similar statutes in adjoining states. 1 *Black. Com.* 459; 1 *Salk. R.* 121; 1 *N. H. Rep.* 260, *Bow* vs. *Nottingham;* 1 *Doug.* 9, *King* vs. *Hawlington;* 3 *Gil. Ev.* 1048–50; 3 *N. H. Rep.* 316, *Dorchester* vs. *Deerfield;* 2 *Mass.* 109, *Wright* vs. *Wright;* 12 *Mass.* 388, *Somerset* vs. *Dighton.*

In this case both paupers were liable to be relieved by South Hampton, where they happened to be when they required relief; *N. H. Laws* 305, and that town has a remedy over against the place of the wife's settlement, which is required to support the alien husband with the wife, looking to the county for remuneration. *Statute, Dec.* 16*th*, 1828; *N. H. Laws* 300. So far as payment was made to the plaintiffs by the county, the amount received has been deducted from their claim, and a verdict is taken for the remainder merely.

South Hampton *v.* Hampton Falls.

UPHAM, J.   The case finds that Louisa Wood, the pauper, was born in the winter of 1791–2, at Hampton Falls, and was an illegitimate child.   She therefore had her settlement in that town; as, prior to our statute of January 1, 1796, illegitimate children had their settlement at the place of their birth.

There are exceptions, however, to this rule.   Thus, if a child is born in a gaol, a house of correction, or hospital, or during the execution of an order for removal of the mother from one parish to another, or where the mother has been by collusion or fraud sent into an adjoining parish, in order to fix the settlement of a child there by its birth, in such cases the child has the settlement of its mother; but these exceptions must be shown affirmatively.   The place of the birth will otherwise be conclusive evidence of the settlement.

It appears in the present case that the mother of the pauper left Kensington, where she had resided a year or two, and went to reside at Hampton Falls, and that within a short time after her removal there the pauper was born.   There is no evidence, however, tending to show that her return to Hampton Falls was procured by any fraud or collusion, in order to impose the burthen of the settlement of her child on that town.   Her return there under such circumstances might perhaps have been naturally expected, as it was her native town; at least, no fraudulent design to change the settlement of the child can be presumed from the mere fact of removal.

But it is said that Louisa Wood, the pauper, subsequently acquired a new settlement in Kensington, by her mother taking her with her to Kensington soon after the birth of said Louisa, and residing there with her for some years; and this depends upon the question whether a child under the age of seven years could, as the law then was, acquire a new settlement in its own right.   The pauper was six years of age when the statute of 1796 was passed.   It is clear that she has acquired no settlement since the passage of that act.

Did she acquire a settlement in her own right prior to the passing of that act? It is contended that she did.

It is said, in *Gilbert's Evidence* 1050, "that the earliest period in which a child can acquire a settlement in its own right, is at the age of seven years and forty days." This time is specified for the reason that a child is considered as capable of commencing an apprenticeship at seven years of age, and that forty days residence after that time under indentures will give it a settlement.

But it is urged that the English common law has been altered by our statute of 5 George I., by which a residence of any person for three months in any town gives a settlement to such person unless he has been duly warned out; and that it has been also altered by act of 2 George III., by which the time for gaining a settlement was extended to one year, leaving the other provisions of the act of 5 George I. in force. The proviso to these acts is said to sustain this position, for the reason that the exception is therein made "that persons who shall come or be sent into an adjoining town for nursing or education shall not under such circumstances gain a settlement"; and it is contended that the first exception named in the proviso applies only to infant children, within the age of two or three years, and that those over that age may legally acquire a settlement under the statute.

This might perhaps be regarded as the intention of the provincial legislature, had not the words in the proviso acquired a previous technical and established meaning under the provisions of the common law.

The English authorities give the custody of a child to the mother for nurture for seven years, and expressly provide that during such time the settlement shall not be changed.

In 6 *Bac. Ab.* 318, it is said that the father has no power over an illegitimate child, nor any right to the custody of it; for till seven years of age the child shall stay with the mother for nurture. And in *Simpson & als.* vs. *Johnson*, 1 *Doug.* 7, it is decided that "where an illegitimate child, having a dif-

ferent settlement from the mother, lives with her for nurture," that is, as I understand it, during the term of seven years, " the parish where the child's settlement is, must maintain it."

The case of *Cumner* vs. *Milton*, 2 *Salk*. 528, is similar. It is there said that a child under the age of seven years is accounted a nurse child; and " if a child be put out to nurse, or for education, though it be above seven years old it, gains no settlement thereby."

The proviso, therefore, seems designed to sustain the provisions of the common law, by the adoption of language to which an established meaning had been applied, rather than as manifesting an intention to overrule and change it. We regard Louisa Wood, then, as incapable of gaining a new settlement while under the age of seven years, and that she therefore has her settlement at Hampton Falls, the place of her birth.

But it is said she was not a pauper, and the case finds that the necessity for relief to her was caused by the sickness of her husband. It is in evidence that she attended him as a nurse until his death; and, being unable by her sole efforts to sustain and take care of herself and husband during his sickness, they both became paupers. If there is any more unexceptionable or meritorious cause of pauperism than this, it is unknown to us. The wife necessarily became a pauper, unless it became her duty to desert her husband on his death bed; an act which we should not require of her, even though it should expose the defendant town to the necessity of her maintenance while in the discharge of such a duty.

It is farther said, that the husband had no settlement at Hampton Falls, but was a county pauper, and that Hampton Falls is not liable for his maintenance. The provision of the statute in such case is, that the husband shall be supported in the same town where the wife has her settlement, though at the charge of the county. 1 *Laws N. H.* 300. Hampton Falls was bound, therefore, to maintain the hus-

band ; but as his illness occurred in another town, relief was necessarily and properly furnished there in the first instance. On notice, the overseers of Hampton Falls were bound to remove and take care of him, or pay such necessary expenses as should be incurred in his support ; and for these expenses they had an ultimate claim on the county. But as South Hampton has applied to the county, and been paid for the expenditures incurred in support of the husband, such payment is a bar to any claim against the defendant for this portion of the account in suit. For the remainder of their claim the plaintiffs are entitled to recover. There will, therefore, be judgment for this amount on the verdict for the plaintiff.